UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| CHARLES A. SAHYOUN,<br><br>    Plaintiff,<br><br>    v.<br><br>FREEDOM WARRANTY OF<br>AMERICA, LLC, and STAN'S<br>AUTOMOTIVE, INC. d/b/a NEWTON<br>AUTOMOTIVE AND SALES,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)  C.A. No. 1:20-CV-00495-MSM-LDA<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

MEMORANDUM AND ORDER

Mary S. McElroy, United States District Judge.

Before the Court is the plaintiff, Charles A. Sahyoun's, Motion to Remand to the Rhode Island Superior Court, where he originally filed this action. (ECF No. 5.) The defendant, Freedom Warranty of America, LLC ("Freedom Warranty"), removed the case to this Court invoking federal diversity jurisdiction. Mr. Sahyoun challenges that removal, arguing that the amount in controversy is not greater than $75,000: the jurisdictional threshold for diversity matters set forth by 28 U.S.C. § 1332(a).

For the following reasons, the Court GRANTS Mr. Sahyoun's motion.

## I.    BACKGROUND

Mr. Sahyoun alleges in his Complaint that in July 2019 he purchased for $57,500 a 2015 Range Rover from Stan's Automotive, Inc. d/b/a Newton Automotive and Sales, in Newton, Massachusetts. (ECF No. 1-1 ¶ 6.)  At the same time, he

purchased a vehicle warranty issued by Freedom Warranty for $4,450.  *Id.* ¶ 9.

The vehicle suffered catastrophic engine failure a few months after purchase. *Id.* ¶¶ 12-13.  Freedom Warranty's service technician could not determine the full extent of the internal damage without disassembling the engine further; thus, Freedom Warranty chose to replace the engine.  *Id.* ¶¶ 14-15.  The total cost of this repair was $29,222.35.  *Id.* ¶ 15.  Freedom Warranty reimbursed Mr. Sahyoun $3,692.21, leaving him to pay the remaining balance of $25,530.14.  *Id.* ¶ 16.

Mr. Sahyoun then brought this action alleging against Freedom Warranty a breach of the warranty contract and a violation of the Massachusetts Regulation of Business Practices for Consumer Protection statute, M.G.L. ch. 93A.

## II.    DISCUSSION

For a federal court to have jurisdiction over a case pursuant to 28 U.S.C. § 1332, the amount in controversy must exceed $75,000.[1]  Federal courts, being of limited jurisdiction, have "a responsibility to police the border of federal jurisdiction." *Speilman v. Genzyme Corp.*, 251 F.3d 1, 4 (1st Cir. 2001).  Jurisdictional limitations, "combined with principles of federalism and comity, requires that removal statutes are to be construed strictly and, in ambiguous cases, construed against removal." *Porter v. Am. Heritage Life Ins. Co.*, 956 F. Supp. 2d 344, 347 (D.R.I. 2013) (citing *Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 109, 61 S. Ct. 868, 85 L.Ed. 1214 (1941); *Rosello–Gonzalez v. Calderon–Serra,* 398 F.3d 1, 11 (1st Cir. 2004)).  The

---

[1] The other requirement of 28 U.S.C. § 1332, that the parties be citizens of different states, is not in dispute here.

Court also must be mindful that "the plaintiff is master of the claim" and some deference to the plaintiff's choice of forum is warranted. *Porter*, 956 F. Supp. 2d at 347; *see also Amoche v. Guarantee Trust Life Ins. Co.,* 556 F.3d 41, 50-51 (1st Cir. 2009) (discussing the "general rule of deference to the plaintiff's chosen forum").

When a plaintiff objects to the removal of a suit from state to federal court, the burden is on the defendant to establish that federal jurisdiction is proper. *Amoche,* 556 F.3d at 48. Removal is proper if the defendant establishes a "reasonable probability" that the amount in controversy meets the jurisdictional minimum. *Id.; see also* 28 U.S.C. § 1446(c)(2)(B) (providing that removal of a matter on the basis of diversity jurisdiction is proper if "the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds" $75,000).

If the amount in controversy is not facially apparent from the Complaint, a court may consider the Notice of Removal and any other relevant materials submitted by the parties. *Amoche*, 556 F.3d at 51; *Reynolds v. World Courier Ground, Inc.*, 272 F.R.D. 284, 286 (D. Mass. 2011). Determining federal jurisdiction, however, should be done "without an extensive fact-finding inquiry." *Spielman v. Genzyme Corp.*, 251 F.3d 1, 4 (1st Cir. 2001).

Here, Mr. Sahyoun does not provide in his Complaint a specific calculation for the damages he seeks. Freedom Warranty, in its Notice of Removal, included as potential damages the purchase price of the vehicle ($57,550), the cost of the warranty ($4,450), and the unreimbursed cost of the engine repair ($25,530.14), for a total of $87,530.14. (ECF No. 1 ¶ 9.) Mr. Sahyoun asserts that he has made no claim against

3

Freedom Warranty for the purchase price of the vehicle.  Instead, he has made a claim

for breach of the warranty and for statutory penalties under M.G.L. ch. 93A.  Given

that Mr. Sahyoun's claim against Freedom Warranty arises from the alleged breach

of the warranty, the Court finds no indication that the potential damages against

Freedom Warranty includes the cost of the vehicle.

Even accepting this reduction, Freedom Warranty maintains that because

M.G.L. ch. 93A allows for treble damages, the amount in controversy is at least

$76,590.42.  In other words, three times $25,530.14—the balance of the engine

replacement cost that Freedom Warranty refused to pay.

Mr. Sahyoun calculates his potential damages differently.  Although the

unreimbursed repair costs when combined with the cost of the warranty would

approach $30,000, he points to a liability limiting provision of the warranty

agreement:

> Limits of Liability.  The aggregate total paid on this contract will not
> exceed the actual cash value (ACV) of the Vehicle as determined by
> NADA retail value based on the vehicle condition at the time of claim or
> $20,000 (twenty thousand dollars) whichever is less.[2]
> (ECF No. 5-1 at 4.)

Mr. Sahyoun therefore understands the amount in controversy to be $60,000—

three times the $20,000 contractual liability limit.

Freedom Warranty argues that Mr. Sahyoun's use of the warranty's liability

---

[2] Neither party provided the Court with a copy of the warranty agreement.  The "Limits of Liability" provision is excerpted in Mr. Sahyoun's memorandum in support of this Motion.  Freedom Warranty, however, does not dispute the accuracy of the excerpted portion or the existence of that provision in the warranty agreement.

limitation is an improper post-removal attempt to defeat jurisdiction.  The Court

disagrees.  The warranty's liability limitation predates the removal and is relevant

information as to the case value.  Indeed, Freedom Warranty indicated prior to suit

that it intends to use that provision as a defense to damages.  Its counsel, in a May

14, 2020, letter to Mr. Sahyoun's attorney, commented that "[a]s a matter of contract,

Freedom Warranty's liability under the Vehicle Service Contract is limited to

$20,000…."  (ECF No.7-1.)

The evidence before the Court suggests that Mr. Sahyoun's recovery is

contractually limited at $20,000, though perhaps trebled under M.G.L. ch. 93A,

making a total of $60,000.

Finally, Freedom Warranty argues that because an award of attorneys' fees is

mandatory for a violation of M.G.L. ch. 93A, this also should be included in the

calculation of the amount in controversy.  While this may be true,[3] Freedom Warranty

offers no argument or evidence as to what attorneys' fees may total.  The Court will

not speculate on whether this will cause the amount in controversy to move the total

beyond $75,000.

In all, Freedom Warranty has not sustained its burden to demonstrate to a

reasonable probability that the amount in controversy is in excess of $75,000. *See* 28

U.S.C. § 1332(a); *Amoche*, 556 F.3d at 48.

---

[3] *See Dep't of Recreation & Sports v. World Boxing Ass'n*, 942 F.2d 84, 90 (1st Cir. 1991) ("[W]hile attorney's fees may, if authorized by law, constitute part of the amount in controversy, they may only do so to the extent reasonable.").

### III.    CONCLUSION

For the foregoing reasons, the Court GRANTS Mr. Sahyoun's Motion to Remand (ECF No. 5).  This matter is remanded to the Rhode Island Superior Court sitting in Providence, for the counties of Providence and Bristol.


IT IS SO ORDERED.

Mary S. McElroy
United States District Judge
June 14, 2021